Millisan, J.,
delivered the opinion of the Coure
The history of this case is somewhat peculiar, extending over a period of more than eight years. In 1860, the prisoner was indicted in the Criminal Court of Davidson County, for an alleged rape, committed when he was about seventeen years old, and the slave of Dr. William H. Wharton, upon the body of Elizabeth Hare. He has been three times convicted by a jury of the county, twice sentenced to death, and now *3 stands for the third time, before this Court, under sentence of imprisonment in the penitentiary of the State for the period of ten years.
The alleged rape was perpetrated on the 29th day of December, 1859; and in 1860, the prisoner was indicted, convicted, and sentenced, under the law as it then existed, to be hanged. On an appeal to this Court, the judgment of the Criminal Court was reversed, and for some reason, not apparent in this record, as we are informed, the prisoner discharged. In 1861, he was re-indicted for the same offense; and while he still was the slave and property of Dr. Wharton, he was again tried and convicted under this indictment, and a second time sentenced to death; and again appealed to this Court. The case was reversed here in 1865, and the judgment of the Criminal Court, reversed upon the facts, and the cause remanded for a new trial. He was again put upon his trial before a jury, who, in their verdict, say, they find “the defendant was a slave at the time this bill of indictment was found, and that he is guilty as charged;” and assessed his imprisonment in the penitentiary for the period of ten years; from which the prisoner appealed to this Court.
There is more than one fatal error in this record, upon which this Court would be compelled to reverse; but we prefer to pass them by for the present, and put the case at once upon the grounds, on which at last, it must be determined.
On the 22d of February, 1865, the institution of slavery, by the ratification of the proposed amendments to the Constitution, was formally abolished in this State, *4 and the prisoner elevated from the degradation of a state of servitude to the rights and privileges of a freeman.
Prior to the emancipation of the slaves in Tennessee, the Code provided, sec. 2625, that “the following crimes, when committed by slaves, shall be capital, and punished with death, by hanging:
“1. Murder.
“2. Assault upon a free white ' person, with intent to commit murder in the first degree.
“3. Being accessory, before the fact, to murder in the first degree.
“4. Preparing, exhibiting, or being accessory to the administering of any poison, potion, or medicine, whatever, with intent to kill any person.
“5. Rape, upon a free white female.
“6. Having, or attempting to have, any sexual intercourse with a free white female under twelve years of age.
“8. Robbery, arson, or burglary,” etc.
By the criminal laws of this State, applicable to free white persons, no crime except murder in the first degree, or as accessory before the fact, to such crime, was punished capitally: Code 4601. All other crimes, or offenses, were punished by confinement in the penitentiary, or by fine and imprisonment, or fine alone, without imprisonment, as the case may be.
After the abolition of slavery in the State, and the consequent change of the legal status of the negro, the Legislature, on the 26th of May, 1866, enacted, sec. 2, “That persons of color,” have the right to make *5 and enforce contracts, to sue and be sued, to be parties and give evidence, to inherit, and to have full and equal benefits of all laws and proceedings for the security of persons and estates; and shall not be subject to any other or different punishment, pains, or penalties, for the commission of any act or offense, than such as are prescribed for white persons committing like acts or offenses.”*
By the 4th section of this Act, it is declared, “That all Acts or parts of Acts and Laws, inconsistent herewith, are, hereby, repealed:” Acts of 1865-6.
Before the passage of the Act of 1866, chapter 40, in the case of the State vs. Davidson, 2 Col., 184, it was held by this Court, that the general rule of law was, “To authorize the punishment of the accused, it must not only appear, that, at the time the act was committed, it was declared unlawful, its punishment declared and fixed by law, and, that there was a tribunal clothed with power and authority to try the offender, pronounce judgment, and enforce the penalty incurred by a violation of the law; but such laws must also be valid and subsisting at the time of the trial, or no judgment can be pronounced, or punishment inflicted; and if either has failed, or is wanting at the time of the trial, such failure operates as a pardon of the offense, and entitles him to a discharge.”
The rule thus laid down, we take to be sound, and in strict accord with the principles announced by this Court in the cases of Roberts vs. The State, 2 Tennes *6 see R., 423, and Bennett vs. The State, 2 Yer., 472. But it is insisted that the second section of tbe Act of 1866, chapter 40, is prospective in its operation and effect, and cannot-be held to repeal the provisions of the Code herein before quoted, so far as they impose a different and a heavier punishment upon slaves than upon white persons, for the commission of the same crime. How this might be, if .the second section of the Act stood alone, we need not now undertake to determine; fox the 4th section of the same Act, in terms, repeals “all Acts or parts of Acts and laws inconsistent” with this Act.
The second section of the Act of 1866, chapter 40, by necessary implication, takes away the death penalty annexed to the crime of rape, when committed by a colored man, upon a white woman, after its passage, and substitutes, as in cases of white men, imprisonment in the penitentiary. Now, it cannot be said, we apprehend, that this Act is not inconsistent with the provisions of the Code, sec. 2625; and if so, the fourth section of the Act of 1866, expressly repeals it.
In the case before cited, of Roberts vs. The State, which was approved in the case of Bennett vs. The State, this Court said: “To effect a repeal, it is not necessary that the latter statute should have an express repealing clause. If it be a legislation upon the same subject, and contain different and inconsistent provisions, it operates as a repeal.” * *
The Court further say, that, “It is a doctrine, to the correctness of which we know of no exception in any of the reported cases, that in all cases, where a statute creates a different punishment, the former mode *7 is thereby repealed; and tbe rule operates, whether the punishment thus altered is diminished or increased;” citing 6 Bac. Abr. Am., 372; 2 Leach, 306; 4 Barr., 2036.
The repeal of a penal statute, operates as a pardon of all crimes or offenses committed before that time, and supersedes the jurisdiction of the Criminal Courts, except when the repealing statute contains a provision expressly saving the right to prosecute. No such provision is incorporated in the Act under consideration; and however much inconvenience may result from it, we, as a Court, sitting to declare the law, not to make it, are not responsible for it.
The judgement of the Criminal Court must be reversed, and the prisoner discharged.

 See also Act of Congress, commonly called, “The Civil Bights Act.”